IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JONATHAN LYNN LUTEN,

      Petitioner,

v.                                            No. 1:20-cv-01113-JDB-jay
                                             Re: 1:15-cr-10024-JDB-1

UNITED STATES OF AMERICA

      Respondent.

ORDER DENYING § 2255 PETITION,
DENYING MOTION FOR COUNSEL,
DENYING MOTIONS TO AMEND THE PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

      The Petitioner, Jonathan Lynn Luten,[1] filed a pro se motion to vacate, set aside, or correct

his sentence (the "Petition") pursuant to 28 U.S.C. § 2255.  (Docket Entry ("D.E.") 1.)[2]  He also

submitted a motion for appointment of counsel (D.E.16), a motion to amend the Petition (the "First

Motion to Amend") (D.E. 15), and a second motion to amend the Petition (the "Second Motion to

Amend") (D.E. 20).  For the following reasons, the Petition and the motions are DENIED.

BACKGROUND

      In March 2015, a federal grand jury sitting in the Western District of Tennessee charged

Luten with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  (*United

States v. Luten*, No. 1:15-cr-10024-JDB-1 (W.D. Tenn.) ("No. 1:15-cr-10024-JDB-1"), D.E. 1.)

In September 2015, Defendant entered into a plea agreement with the Government whereby he

---

[1]  The Court will refer to Luten as "the Defendant" in its discussion of his criminal case.

[2]  Unless otherwise noted, record citations are to documents filed in the present case.

agreed to plead guilty to the sole count of the indictment and to waive his appeal rights.  (*Id.*, D.E. 24.)  In exchange, the Government promised to recommend that he receive a sentence at the low end of the sentencing range calculated under the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."), that his sentence be ordered to run concurrently to a related state sentence, and that he receive appropriate decreases in his base offense level for acceptance of responsibility.  (*Id.*, D.E. 24 at PageID 30-31.)  On September 4, 2015, Defendant pleaded guilty to the sole count of the indictment.[3]  (*Id.*, D.E. 23.)

In anticipation of sentencing, the United States Probation Office prepared a presentence report (the "PSR").  (*Id.*, D.E. 130.)  The PSR advised that Defendant qualified for a minimum sentence of 180 months' incarceration under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), because he had three prior violent felony convictions.[4]  (*Id.*, D.E. 130 at ¶ 21.)  The ACCA predicates listed were Luten's Tennessee convictions for aggravated burglary, civil rights intimidation, and aggravated robbery.  (*Id.*, D.E. 130 at ¶¶ 21, 42, 45, 47.)  Based on a total offense level of 31 and a criminal history category of VI, the Guidelines imprisonment range was calculated to be 188 months to 235 months.  (*Id.*, D.E. 130 at ¶ 82.)

On November 6, 2019, Luten was sentenced to a below-Guidelines sentence of 180 months' incarceration, to be served concurrently with any sentence imposed in Gibson County

---

[3]  During the course of the criminal case, the Court appointed five separate counsel to represent Defendant: the Office of the Federal Public Defender, Matthew Maddox, C. Mark Donahoe, Steve West, and Michael Weinman.  Weinman represented Luten from September 2016 through sentencing in 2019.

[4]  The ACCA provides that a person who is convicted of being a felon in possession of a firearm and who "has three previous convictions . . . for a violent felony or a serious drug offense . . . committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years[.]"  18 U.S.C. § 924(e)(1).

Circuit Court, Docket Number 2015-CR-9207, and two years of supervised release.  (*Id.*, D.E. 134.)  Judgment was entered the next day.  (*Id.*, D.E. 135.)  Defendant did not take a direct appeal.[5]

## DISCUSSION

Luten filed the Petition on May 20, 2020.  Liberally construed, the pleading presents three claims.[6]  In Claim 1, Petitioner posits that Michael Weinman provided ineffective assistance by giving him inconsistent information about whether his Tennessee aggravated burglary conviction would qualify him for enhanced sentencing under the ACCA.  He asserts in Claim 2 that counsel was ineffective by offering inconsistent advice regarding an appeal.  In Claim 3, the inmate maintains that counsel rendered ineffective assistance by failing to seek an evaluation of Petitioner's mental health status.

The Government filed a response to the Petition on January 6, 2021, and an affidavit from Michael Weinman.  (D.E. 11, 11-1.)  Respondent argues that none of the claims are meritorious.  Petitioner did not file a reply, although allowed to do so.  (*See* D.E. 5 at PageID 9.)

On July 28, 2022, Luten filed the First Motion to Amend the Petition, seeking leave to assert two additional claims[7]  He also submitted the motion for appointment of counsel on the same day.  In the latter document, he asks the Court to appoint an attorney to represent him in

---

[5]  Luten filed a notice of appeal in July 2021.  (No. 1:15-cr-10024-JDB-1, D.E. 158.)  The Sixth Circuit dismissed the appeal as untimely.  (*Id.*, D.E. 165.)

[6]  The Court has renumbered the claims for ease of discussion.

[7]  In the body of the motion, Petitioner referred to the document as a "2nd o[r] successive 2255[.]" (D.E. 15 at PageID 44.)  Because the motion was filed prior to disposition of the Petition, the Court construed the document as a motion to amend the Petition.  (D.E.17 at PageID 48.)  *See generally* 28 U.S.C. § 2244(b); *see also Clark v. United States*, 764 F.3d 653, 658 (6th Cir. 2014) ("A motion to amend is not a second or successive § 2255 motion when it is filed before the adjudication of the initial § 2255 motion is complete[.]")

litigating the putative claims set forth in the First Motion to Amend.  By order dated September 28, 2022, the Court directed Respondent to respond to the First Motion to Amend and held the motion for counsel in abeyance pending the Government's response.  (D.E. 17.)  Respondent filed its response on October 18, 2022, opposing amendment of the Petition.  (D.E. 19.)

On March 20, 2023, the inmate filed the Second Motion to Amend,[8] seeking to add two claims pursuant to the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (D.E. 20.)  Respondent did not file a response to the motion.

I.       § 2255 Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  To establish an error of constitutional magnitude, a petitioner "must demonstrate the existence of an error . . . which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).  For a petitioner "to obtain relief under § 2255 on the basis of non-constitutional error, the record must reflect a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *McWhorter v. United States*, 156 F.3d 1231 (6th Cir. 1998) (table) (first citing *Reed v. Farley,* 512 U.S. 339, 348 (1994); then citing *United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir. 1993) (per curiam)).

---

[8] Petitioner also referred to this motion as a second or successive petition.  Like the First Motion to Amend, the document is not a second or successive petition, but rather a motion seeking leave to amend the Petition.

Proceedings under § 2255 are not a substitute for direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Therefore, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" to excuse the procedural default.  *Id.*  A petitioner may also seek to overcome the default on the ground "that he is 'actually innocent'" of the crime of conviction.  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

II.   <u>Claim 1</u>

Luten insists that counsel performed deficiently by giving him inconsistent information about whether he could be sentenced under the ACCA.  Specifically, he alleges that on February 7, 2018, counsel advised him that he would not be sentenced under the ACCA because "the aggravated burglary would not be used to" qualify him for enhanced sentencing under that statute. (D.E. 1 at PageID 2.)  According to Petitioner, counsel later told him, on November 6, 2019, that he was subject to an enhanced sentence under the statute.

As discussed above, the ACCA provides for a minimum 15-year sentence for a defendant convicted of being a felon in possession of a firearm who has "three previous convictions . . . for a violent felony or a serious drug offense . . . committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1).

The statute defines "violent felony" as

any crime punishable by imprisonment for a term exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  Subsection (i) is commonly called the "use-of-force" clause.  *United States v. Priddy*, 808 F.3d 676, 683 (6th Cir. 2015).  The first part of subsection (ii) is the

"enumerated-offenses" clause, while the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is referred to as the "residual clause." *Id.*

To determine if a conviction constitutes a violent felony under the enumerated-offenses or use-of-force clause, a court must first apply the "categorical approach," which focuses on the statute under which the petitioner was convicted, rather than his conduct. *Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575, 599-600 (1990)). If the statute is "divisible," meaning it describes multiple offenses, the court may "employ the 'modified categorical approach.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir.) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257). The Supreme Court in *Mathis v. United States*, 136 S. Ct. 2243 (2016), clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 136 S. Ct. at 2249. If the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited. *Id.* at 2248.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute," *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. 2018), matches the generic definition of an enumerated offense, *Mathis*, 136 S. Ct. at 2247, or the federal definition of "physical force" as "force capable of causing physical pain or injury to another person," *United States v. Southers*, 866 F.3d 364, 366 (6th Cir. 2017) (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). If there is a mismatch, the prior conviction is not a violent felony under the ACCA. *Cradler*, 891 F.3d at 667 (citing *Descamps*, 570 U.S. at 257).

"The Supreme Court has defined generic burglary as an 'unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" *Carter v. United States*, 820 F. App'x 392, 395 (6th Cir. 2020) (quoting *Taylor*, 495 U.S. at 598). Tennessee aggravated burglary is defined as "burglary . . . of a habitation." Tenn. Code Ann. § 39–13–1003(a). "Habitation" is "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons*,*" and any "self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant." Tenn. Code Ann. §§ 39–14–401(1)(A), (B).

In 2007, the Sixth Circuit in *United States v. Nance*, 481 F.3d 882 (6th Cir. 2007), held that Tennessee aggravated burglary fits within the scope of generic burglary, and therefore the offense is a violent felony under the ACCA. *Nance*, 481 F.3d at 888. In 2017, the Sixth Circuit, sitting en banc, overruled *Nance*. *United States v. Stitt*, 860 F.3d 854, 861 (6th Cir. 2017) (en banc), *rev'd*, *United States v. Stitt*, 139 S. Ct. 399 (2018). The court held that the indivisible Tennessee statute—which defines "habitation" to include "vehicles and movable enclosures"—describes an offense that is broader than generic burglary and thus is not a violent felony under the ACCA. *Id.* at 858, 862.

In December 2018, the Supreme Court reversed the Sixth Circuit's en banc ruling in *Stitt*, concluding that "burglary of a nonpermanent or mobile structure that is adapted or used for overnight accommodation" is "within the scope of generic burglary's definition as set forth in *Taylor*." *Stitt*, 139 S. Ct. at 404, 406. In July 2019, the Sixth Circuit held that "*Nance's* holding . . . is once again the law of this circuit." *Brumbach v. United States*, 929 F.3d 791, 794 (6th Cir. 2019).

Luten's allegations that counsel gave him inconsistent advice about whether his Tennessee aggravated burglary conviction could be used to qualify him for an enhanced sentence under the ACCA do not show that counsel performed deficiently.  In February 2018, the date Petitioner alleges counsel told him that his Tennessee conviction was not an ACCA predicate, the Sixth Circuit's en banc ruling in *Stitt*—*i.e.*, that Tennessee aggravated burglary was not a violent felony for purposes of the ACCA—was controlling precedent in this circuit.  Therefore, counsel's advice at the time was correct.  By the time counsel informed Petitioner in November of 2019 that his aggravated burglary conviction was an ACCA predicate, the Supreme Court's decision in *Stitt* and the Sixth Circuit's decision in *Brumbach* had been issued.  Counsel's advice in November 2019 was therefore also correct.  Petitioner has thus failed to establish that counsel performed deficiently.

He also has not shown that he was prejudiced by counsel's conduct.  More to the point, he does not explain how counsel's allegedly deficient advice led to a different outcome in the case.  He therefore has not established a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Claim 1 is DENIED.

III.   <u>Claim 2</u>

Petitioner posits that counsel rendered ineffective assistance by giving him inconsistent advice regarding an appeal.  Specifically, he alleges:

> Mr. Weinman told me that if by chance I was sentenced under the ACCA act that I could appeal my sentence in 14 days.  Upon being sentenced under ACCA, Mr. Weinman told me that I will not be able to appeal my sentence because I waived my right to appeal in a 2015 guilty plea.

(D.E. 1 at PageID 1.)

Respondent argues that the claim should be denied because the allegations do not support a finding of deficient performance by counsel or a determination that counsel's conduct prejudiced Petitioner. The Court agrees.

Petitioner has not established any deficiency in counsel's advice. More to the point, he does not explain the timeframe or the context of counsel's statement that he would have fourteen days to file a notice of appeal.[9] In addition, counsel's advice that a notice of appeal must be filed within fourteen days of entry of judgment was correct. *See* Fed. R. App. P. 4(b). Finally, without knowing the context, the Court cannot determine if counsel's two advisements were even contradictory, as Petitioner did in fact waive his right to appeal but nevertheless could have directed counsel to file a notice of appeal. *See Garza v. Idaho*, 139 S. Ct. 738, 749-50 (2019)[10]

But even assuming that counsel performed deficiently, Petitioner has not established that, but for counsel's conduct, there is a reasonable probability that the result of the proceedings would have been different. For one thing, he does not allege that in the absence of counsel's purportedly inconsistent advice he would have appealed his ACCA sentence. For another, an appeal of the ACCA sentence would have been unsuccessful in light of the Supreme Court's decision in *Stitt* and the Sixth Circuit's decision in *Brumbach*. Petitioner therefore does not meet *Strickland*'s prejudice prong. As Claim 2 is without merit, it is DENIED.

---

[9]  In his affidavit, Weinman represents that he does "not recall telling Mr. Luten that if the court ultimately found he qualified for the ACCA enhancement he could appeal that decision." (D.E. 11-1 at PageID 36.) For purposes of analysis, however, the Court assumes, without deciding, that Petitioner's allegation that counsel discussed a 14-day time period for appealing is true.

[10] Petitioner does not allege that he directed counsel to file an appeal.

IV.     Claim 3

Petitioner maintains that counsel provided ineffective assistance by failing to have his mental status evaluated.  He alleges that he "was denied mental evaluation by Mr. Weinman on numerous occasions even after it was noted in the pre-sentence report that [he has] a mental illness." (D.E. 1 at PageID 2-3.)  He further alleges that counsel "stated that an evaluation wouldn't be needed because he was sure that [Petitioner] would not get sentenced to over 120 months." (*Id.* at PageID 3.)  Respondent argues that the claim is without merit because Petitioner fails to provide facts to support his general allegation that counsel was ineffective.  The Government's position is well taken.

Petitioner's allegation that he "was denied mental evaluation by Mr. Weinman on numerous occasions" is unaccompanied by specific facts.  For example, Luten does not allege when he asked counsel about a mental evaluation and when counsel purportedly denied the requests.  Even more importantly, Petitioner does not explain what, exactly, his mental condition or status was in September 2016 through the end of 2019, which was the time period during which Weinman represented him.  His reliance on the PSR to fill-in that missing information is misplaced.  That document provides information about Petitioner's prior evaluations and hospitalizations occurring between 1994 and 2003.  (*See* No. 1:15-cr-10024-JDB-1, D.E. 130 at ¶¶ 67-73.)  It does not, however, say anything about his mental status during the relevant timeframe.  At bottom, Petitioner has not alleged, let alone shown, that there was any basis for counsel to seek a mental evaluation.  The assertion of deficient performance is therefore unsubstantiated.

Luten also has not shown that counsel's conduct prejudiced him.  More to the point, he does not allege how the results of his proceedings would have been different had counsel sought a mental evaluation.  Because Claim 3 is without merit, it is DENIED.

V.      Motions to Amend

In the First Motion to Amend, Petitioner asserts that his Tennessee conviction for civil rights intimidation is not a predicate under the ACCA because he "didn't serve a year and a day on that charge" ("Putative Claim 1").  (D.E. 15. at PageID 44.)  He also insists that the conviction is not an ACCA predicate in light of the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021) ("Putative Claim 2").   In his motion for counsel, the inmate seeks appointment of an attorney to represent him in pursuing the putative claims.

Respondent argues that the First Motion to Amend should be denied because the claims would be untimely under 28 U.S.C. §§ 2255(f)(1) and (f)(3), respectively.  The Government does not take a position on the motion to appoint counsel.

A motion to amend a § 2255 petition is governed by the Federal Rules of Civil Procedure. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014).  Rule 15 provides that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied, however, when amendment would be futile.  *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. §§ 2244(b) and 2255 to limit a defendant to his direct appeal and one collateral attack, filed within one year of the date his conviction became final.  28 U.S.C. § 2244 *et seq*.  Paragraph (f) of § 2255 provides:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Generally, under § 2255(f)(1), "a conviction becomes final for purposes of collateral attack at the conclusion of direct review." *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). For a defendant who does not take a direct appeal, the judgment of conviction becomes final upon the expiration of the time for him to seek direct review. *Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir. 2004). Under the Federal Rules of Appellate Procedure, a defendant in a criminal case normally has fourteen days from entry of judgment in which to appeal. *See* Fed. R. App. P. 4(b)(1)(A).

The one-year statute of limitations in 28 U.S.C. § 2255(f) is not a jurisdictional bar and is subject to equitable tolling under extraordinary circumstances. *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012). Equitable tolling requires the petitioner to show that (1) "he has been pursuing his rights diligently" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* Additionally, a credible showing of actual innocence will allow a petitioner to overcome the statute of limitations, rather than provide him an excuse for the late filing. *Yousafzai v. United States*, No. 17-1071, 2017 WL 3185189, at *2 (6th Cir. June 7, 2017) (citing *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)).

Luten did not appeal his conviction or sentence.  Pursuant to § 2255(f)(1), his conviction became final on Friday November 22, 2019, which was fourteen days after entry of judgment.  *See* Fed. R. App. P. 4(b).  The § 2255 limitations period began to run on Monday November 25, 2019, which was the next business day, and expired one year later on Wednesday November 25, 2020.  Luten did not file the First Motion to Amend until July 28, 2022.  Therefore, if Petitioner were allowed to proceed with Putative Claim 1, it would be untimely by over one and one-half years.

Putative Claim 2 would likewise be untimely.  In *Borden*, the Supreme Court held that a criminal offense that requires only a mens rea of recklessness does not qualify as a "violent felony" under the ACCA's use-of-force clause.  *Borden*, 141 S. Ct. at 1834.  *Borden* was issued on June 10, 2021.  Pursuant to § 2255(f)(3), Petitioner was therefore required to raise a claim based on that decision no later than June 10, 2022.  He did not do so, as he filed the First Motion to Amend on July 28, 2022.  *See United States v. Mills*, No. CR 16-20062, 2022 WL 17540996, at *1 (E.D. Mich. Dec. 8, 2022) (§ 2255 Petition asserting claim under *Borden* was untimely because it was filed more than one year after that decision was issued).

Petitioner does not argue as to either putative claim that he is entitled to equitable tolling of the applicable limitations period,[11] or that he is actually innocent of the crime of which he was convicted. Therefore, even if the Court were to allow Luten to bring the claims, they would be subject to dismissal as untimely.

---

[11]  The Court notes that in July 2021, the month following the Supreme Court's decision in *Borden*, Petitioner had no problem filing with this Court three pro se documents in his criminal case: two notices of appeal from the denial of compassionate release (No. 1:15-cr-10024-JDB-1, D.E. 156, 159) and an untimely notice of appeal from the judgment of conviction (*id.*, D.E. 158). He also submitted a pro se brief to the Sixth Circuit on July 29, 2021. (*United States v. Luten*, No. 21-5678 (6th Cir.), D.E. 5.)

Because amending the Petition to add the putative claims would be futile, the First Motion to Amend is DENIED. The motion for appointment of counsel is also DENIED as moot.

In the Second Motion to Amend, Petitioner seeks leave to add two claims related to the Supreme Court's decision in *Rehaif*, 139 S. Ct. at 2191. Specifically, he maintains that the indictment was fatally flawed for failing to recite a knowledge-of-status element ("Putative Claim 3"), and his guilty plea was involuntary because the Court did not inform him at the change of plea hearing that the Government had the burden of establishing that element ("Putative Claim 4").

As relevant here, § 922(g) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g). In *Rehaif*, the Supreme Court held that, to prove a § 922(g) violation, "the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif*, 139 S. Ct. at 2194.

The holding in *Rehaif* has implications for charging documents. As a general matter, "[a]n indictment must allege all the elements charged to 'ensure that an accused is reasonably informed of the charge against him so that he can prepare a defense.'" *United States v. Garrison*, 839 F. App'x 968, 982 (6th Cir. 2020) (citing *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)), *cert. denied*, 141 S. Ct. 2866 (June 28, 2021). Therefore, after *Rehaif*, an "indictment . . . now must include that a defendant charged under § 922(g) *knew* of his prohibited status." *Id.* at 983.

Similarly, when a defendant pleads guilty to violating § 922(g), the court's plea colloquy must account for *Rehaif*'s holding. It is fundamental that a guilty plea is not voluntary and knowing if "the defendant [does not] understand the 'critical' or 'essential' elements of the offense to which

14

he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)).   Therefore, post-*Rehaif*, a defendant who pleads guilty to being a felon in possession of a firearm must be advised by the district court during the plea colloquy of the knowledge-of-status element.   *See Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) ("*Rehaif* error[] occurred" when "the District Court failed to advise [the defendant] during the plea colloquy that, if he went to trial, a jury would have to find that he knew he was a felon").

Petitioner's contention in Putative Claim 3 that the indictment was fatally defective because it failed to charge the knowledge-of-status element is unavailing.   The Sixth Circuit has "recently joined several other circuits in holding that the omission of the knowledge-of-status element required by *Rehaif* does not deprive the district court of jurisdiction."   *Brown v. United States*, No. 20-3632, 2021 WL 2470311, at \*2 (6th Cir. May 21, 2021) (citing *United States v. Hobbs*, 953 F.3d 853, 856-57 (6th Cir. 2020)).   In addition, "the indictment put [Luten] on sufficient notice that he could have raised an objection to the omission of the element."   *Id.* (citing *United States v. Ward*, 957 F.3d 691, 694-95 (6th Cir. 2020)).

Putative Claim 4, which alleges that Petitioner's guilty plea was unknowing because the Court did not advise him of the prosecution's burden to establish that he knew he was a felon, is without foundation.   To prevail on that claim, Petitioner would have to show that the Court's failure to inform him of the knowledge-of-status element at the change of plea hearing had "a substantial and injurious effect or influence on [his] guilty plea[.]"   *Griffin*, 330 F.3d at 736.   He could not make that showing, as he has not alleged that he did not know he was a felon or pointed to any evidence suggesting that he lacked such knowledge.   *Cf. Greer*, 141 S. Ct. at 2097-98 (on direct appeal under plain error review, where defendant did not argue that he "would have presented

evidence in the district court that he did not in fact know he was felon when he possessed the firearms," he failed to "show that, but for the *Rehaif* error during the plea colloquy, there is a reasonable probability that he would have gone to trial rather than plead guilty").

In fact, the records in Petitioner's underlying criminal case render implausible the notion that he did not know he was a felon when he possessed the firearm. At the change of plea hearing, he admitted that he had "previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that is a felony." (No. 1:15-cr-10024-JDB-1, D.E. 50 at PageID 79.) That "plea . . . admission . . . strongly suggests his knowledge of his status." *Brown*, 2021 WL 2470311, at *2 (citing *United States v. Raymore*, 965 F.3d 475, 486 (6th Cir. 2020)). Additionally, the PSR advised that Luten's criminal history included several felonies, including aggravated burglary in 2004, for which he received three years' custody, and aggravated robbery in 2006, for which he received eight years' custody. (No. 1:15-cr-10024-JDB-1, D.E. 130 at ¶¶ 42, 47.) Defendant did not dispute those findings. At bottom, Petitioner knew he was a felon at the time he possessed the firearm and the Government would have had no problem proving that fact. There is therefore no reasonable probability that Luten would have proceeded to trial had he known of the prosecution's burden to establish the knowledge-of-status element.

Because Petitioner cannot demonstrate that the constitutional errors had a substantial and injurious effect on the outcome of his criminal case, amendment of the Petition to add the *Rehaif* claims would be futile. The Second Motion to Amend is DENIED.

For the reasons discussed *supra*, the Petition is DENIED. Judgment shall be entered for Respondent.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is therefore DENIED.[12]

IT IS SO ORDERED this 26th day of June 2023.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[12] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.